## PRELIMINARY STATEMENT

Pursuant to Rule 56 of the Federal and Local Rules of Civil Procedure, the co-defendants, Officer Brian Flaherty and the City of Middletown submit this memorandum of law in support of their motion for summary judgment on the amended complaint dated March 28, 2003.  In further support of their motion, they have submitted a Local Rule 56(a)1 statement of undisputed material facts and an appendix containing Exhibits A through O.  For the reasons set forth below, the Court should grant the motion.

## BACKGROUND

### I.    STATEMENT OF THE FACTS

#### A.    The Hostile Relationship Between The Plaintiff And His Neighbors Prior To September 16, 2000

The hostile relationship between the plaintiff, David Boganski, and his neighbors, the Martin family, began years prior to September 16, 2000, the date of the events at issue.  (Ex. I, 9/16/00 Statement by Cynthia Martin)  During that time, William C. Martin, III ("Mr. Martin") called the Middletown Police Department ("MPD") on several occasions regarding Boganski. (Ex. B, Boganski Tr. at 65-72)  The Martins maintained that Boganski used profanities towards and harassed the neighborhood children several times per year.  (Ex. E, Mr. Martin's Tr. at 37-38, 42, 52-53; Ex. F, William C. Martin IV's ("Billy Martin") Tr. at 9-10; Ex. G, Cynthia Martin's ("Mrs. Martin") Tr. at 26-31)  Moreover, Mr. Martin maintained that Boganski had threatened to kill him and that he had overheard Boganski threaten another neighbor.  (Mr. Martin's Tr. at 28, 48)  Boganski maintains that on one occasion Mr. Martin and he threatened each other.  (Boganski Tr. at 220)

### B.    The Events of September 16, 2000

#### 1.    The Plaintiff's Misconduct

Between 2:00 and 2:30 p.m. on September 16, 2000, Boganski pulled into his driveway and exited a motor vehicle.  (Ex. H, 9/16/00 MPD Supp. Report; Boganski Tr. at 98)  He was accompanied by his friend, Mariano Rodriguez.  (9/16/00 MPD Supp. Report)  Billy Martin, a 15 year old, and his friend were standing in front of the Martins' garage directly across the street.  (Id.)  Boganski turned towards the boys, grabbed his genitals and made a jerking motion.  (Id.; Ex. I, Mrs. Martin's 9/16/00 Statement)  Unbeknownst to him, Mrs. Martin, who was in the garage and not in plain view, observed his conduct.  (Id.)  She called the MPD and reported the incident.  (9/16/00 MPD Supp. Report)  Flaherty was dispatched to the scene.  (Ex. A, Flaherty Tr. at 25; Ex. D, Augeri Tr. at 13)

#### 2.    Officer Flaherty's Investigation and Arrest of the Plaintiff

Upon arriving at the Martins' residence, Flaherty spoke with Mrs. Martin, Billy and his friend.  (9/16/00 MPD Supp. Report)  They informed him of what they maintained that Boganski had done.  (Id.)  At Flaherty's request, Mrs. Martin began to write out a statement memorializing the event and expressly asking that Boganski be arrested.  (Flaherty Tr. at 25-26; Mrs. Martin's 9/16/00 Statement)

Flaherty went across the street to Boganski's house to speak with him about the incident and to continue his investigation.  (9/16/00 MPD Supp. Report)  Boganski "invited" Flaherty into his house.  (Boganski Tr. at 102)  Boganski was very agitated and denied the Martins' allegations.  (9/16/00 MPD Supp. Report)  He maintained that when he exited his car, Mrs. Martin called him a "fag" and other names.  (Id.)  He also informed Flaherty that his attorney had reviewed Connecticut's "hate laws" and told him to call the police should anything happen with

2

his neighbors.  (Id.)  He did not, however, call the MPD in response to Mrs. Martin's alleged

conduct, in accordance with his attorney's advice.  (Id.)

Flaherty informed Boganski that he was going to issue a misdemeanor summons

complaint ("MSC") for the charge of breach of the peace and asked him for his driver's license.

(9/16/00 MPD Supp. Report)  Although a MSC would have only required Boganski to appear in

court at a later date, he initially refused to provide his license.  (Id.; Flaherty Tr. at 33-40)

Flaherty informed Boganski that without the license he would then have to make a custodial

arrest.  (Id.)  Boganski put his hands behind his back and said "let's go."  (9/16/00 MPD Supp.

Report)  Rodriguez, who was nearby throughout the entire encounter, advised Boganski to give

Flaherty the license.  (Id.)

While Flaherty was attempting to complete the MSC, Boganski, who was still agitated,

told Flaherty that he was wrong and that he was in "big trouble."  (Id.)  Boganski demanded

Flaherty's supervisor's name and was yelling.  (Id.; Flaherty Tr. at 39-44)  Flaherty informed

Boganski that he would now be transported to police headquarters.  (9/16/00 MPD Supp. Report)

He made several requests for Boganski to place his hands on the wall so he could be handcuffed

and searched.  (Id.)  Boganski refused and became more aggressive, grabbing a nearby wall

telephone.  (Id.)  He had the telephone receiver in his hand and tried to hit Flaherty with it.  (Id.)

Flaherty physically placed Boganski against the wall and a struggle ensued.  (Id.)  He wrestled

Boganski to the ground and handcuffed him.  (Id.)  During the entire struggle, Boganski was

yelling to Rodriguez "you see this, you see this."  (Id.)

Officer Stephen Augeri, who was in the neighborhood, traveled to the scene because he

heard the police radio and realized that Flaherty was not being sent any backup.  (Augeri Tr. at

13)  Flaherty had Boganski in handcuffs and was patting him down when Augeri entered the

house.  (Id. at 19)  Boganski was placed in Flaherty's car and Rodriguez was asked to step

outside.  (Flaherty Tr. at 28)  Flaherty does not remember if he went back into Boganski's house

in order to determine if anyone else was inside or to secure the house because Boganski was

being taken into custody.  (Flaherty Tr. at 46-50)  Flaherty did not search or look in any cars.

(Id.)  Augeri testified at his deposition that he and Flaherty conducted a cursory search of

Boganski's house to:  (1) make sure "no other threats [were] in the house" because an officer had

already been in an altercation and (2) to secure the house because it was their responsibility, as

they now had the owner in custody.  (Augeri Tr. at 21-23)  They were not looking for any

specific items.  (Id. at 23)  Augeri only looked in places where a person could hide.  (Id. at 25,

40)  He did not search any vehicles and he did not see Flaherty search any vehicles.  (Id. at 40-

41)  Rodriguez testified that the officers searched the house for 6-8 minutes.  (Ex. C, Rodriguez

Tr. at 54, 60)

### 3.    The Processing of the Plaintiff and the Post-Arrest Proceedings

At police headquarters, Boganski refused to sign a document which contained his

Miranda warnings.  (Ex. J, 9/16/00 Notice of Rights Form)  He was charged with breach of the

peace in violation of Conn. Gen. Stat. § 53a-181, and interference with an officer in violation of

Conn. Gen. Stat. § 53a-167a.  (Ex. K, Uniform Arrest Report).  After a few hours, he was

released on a $500 non-surety bond at approximately 5:30 p.m..  (Ex. L, Bail Interview Form;

Ex. M, Appearance Bond; Boganski Tr. at 231)

On November 2, 2000, a state prosecutor informed Judge Patrick Clifford that since

Boganski had moved permanently to Florida, the state's attorney was going to enter a nolle.  (Ex.

O, State v. Boganski, 11/20/00 Tr. at 1)  "Should he come back, then the state would reopen the

nolle."  (Id.)  The court "noted" the nolle.  (Id.)  This lawsuit followed.

## II.    THE PLAINTIFF'S CLAIMS

This case was removed from the superior court.  The amended complaint contains nine counts.  The first count alleges that Flaherty violated Boganski's "federal constitutional rights to privacy, to be free from unreasonable searches and seizures, to not being placed under arrest or imprisoned without probable cause, and to have equal protection of law."  (Am. Compl., First Count, ¶ 16)[1]  The second count maintains that Flaherty and Middletown violated his "rights to privacy, to be free from unreasonable searches and seizures, to not being arrested or imprisoned without probable cause, and to have equal protection under the law" as guaranteed by the Connecticut Constitution.  (Am. Compl., Second Count, ¶ 16)  In response to interrogatories, Boganski identified Article First, §§ 1, 7 and 20 as the provisions of the Connecticut Constitution upon which he is basing his claims contained in the second count.  (Ex. N, Pl.'s Response to Defs.' Interrogatory No. 20)

When asked to describe in detail how Flaherty allegedly violated his right to privacy and to equal protection under the law, Boganski responded as follows:

> Officer Flaherty entered my house, searched my house and arrested me without cause and without a warrant.  Another police officer assisted him.  My automobiles were also searched.  I was not Mirandized or allowed to make a phone call.  I was kept in custody for several hours before being released.  The incident was published in the newspaper and became publicly known.

(Ex. N, Pl.'s Response to Defs.' Interrogatory No. 18)  He gave the same response when asked to describe in detail how Middletown allegedly violated his rights.  (Ex. N, Pl.'s Response to Defs.' Interrogatory No. 19)

The third count alleges that Flaherty and Middletown "falsely arrested and falsely imprisoned the plaintiff."  (Am. Compl., Third Count, ¶ 16)  The fourth count asserts a claim for

---

[1]    There are no federal constitutional claims asserted against Middletown.

intentional infliction of emotional distress against all of the defendants.  The fifth count asserts a

claim for invasion of privacy against all of the defendants.  Specifically, it alleges that the

defendants "intentionally intruded into the private affairs of the plaintiff, unreasonably placed

him in a false light, and caused him to suffer unreasonable publicity."  (Am. Compl., Fifth

Count, ¶ 16)  The sixth count asserts a defamation claim against the Martin defendants.

The seventh count asserts a claim of negligent infliction of emotional distress against all

of the defendants.  The eighth count alleges that Flaherty and Middletown "committed the torts

of assault and battery against the plaintiff."  (Am. Compl., Eighth Count, ¶ 16)  The ninth count

alleges that the "defendants maliciously prosecuted the plaintiff in contravention of Conn. Gen.

Stat. [§] 52-568."  (Am. Compl., Ninth Count, ¶ 16)

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(b).  See Szekeres v. Schaeffer, 304 F.Supp. 2d 296, 304 (D. Conn.

2004).  A genuine issue of fact only exists when "a reasonable jury could return a verdict for the

nonmoving party," and facts are material to the outcome if the substantive law renders them so.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  If the moving party carries his

burden, the party opposing summary judgment "may not rest upon mere allegations or denials,"

rather the opposing party must "set forth specific facts showing that there is a genuine issue for

trial."  Fed. R. Civ. P. 56(e).  Thus, to defeat a motion for summary judgment, the nonmoving

party "must do more than simply show that there is some metaphysical doubt as to the material

facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

## ARGUMENT[2]

Based on the undisputed evidence, the court should enter judgment in favor of Flaherty and Middletown on all of the claims.

## I. THE PLAINTIFF'S FEDERAL CONSTITUTIONAL CLAIMS ARE WITHOUT MERIT

### A. The Plaintiff Has Failed To Establish A Violation Of The Right To Privacy

Neither the Bill of Rights nor any provision of the Constitution contains a general right of privacy. Paul v. Davis, 424 U.S. 693, 713 (1976); Griswold v. Connecticut, 381 U.S. 479, 530 (1965) (Stewart, J., dissenting).[3] Numerous cases have addressed the constitutionality of alleged government interference with a person's reputation. See Caldarola v. County of Westchester, 142 F.Supp. 2d 431, 440-41 (S.D.N.Y. 2001), aff'd 343 F.3d 570 (2d Cir. 2003). That line of cases holds that there is no constitutionally-protected interest in being free from reputational injury alone. Id. at 441-42 (discussing cases). Arrest and conviction information are matters of public record. See Paul, 424 U.S. at 713. Thus, "[e]ven though being arrested subjects a person suspected of criminal activity to embarrassment and potentially more serious reputational harm, the law is nevertheless clear that no right of privacy 'is violated by the disclosure of an official act such as an arrest.'" Center for National Security Studies v. U.S. Dept. of Justice, 331 F.3d 918, 945-46 (D.C. Cir. 2003). See Paul, 424 U.S. at 713 (disclosing plaintiff's arrest for

---

[2]/    The analysis of the facts in this brief are set forth in the light most favorable to the plaintiff pursuant to the standard governing a motion for summary judgment. Fed. R. Civ. P. 56. Flaherty and Middletown reserve the right to challenge those facts at trial, should it be necessary.

[3]/    Notably absent from the amended complaint is any citation to the provision(s) of the Bill of Rights or Constitution which have allegedly been violated. It is well-established that 42 U.S.C. § 1983 does not provide a substantive basis for liability.

shoplifting did not violate right to privacy); Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1996)

(there is no constitutional right of privacy in one's criminal record); Rosenberg v. Martin, 478

F.2d 520, 524-25 (2d Cir. 1973); Van De Velde v. Wearing, 2004 WL 546661, at *2 (D. Conn.

Mar. 12, 2004) (revealing of plaintiff's status as a suspect did not violate right to privacy).

Accordingly, the court should enter summary judgment on the privacy claim in the first count.

Even assuming for the sake of argument that the Court determines that there is a

constitutional right of privacy not to have the fact of one's arrest made public, Boganski's

privacy claim fails because there is no evidence that there was a publication regarding his arrest

or if there was such a publication, that Flaherty had any involvement in it.  It is well-established

that in order to subject a defendant to § 1983 liability, the defendant must have had "personal

involvement" in the alleged constitutional deprivation.  Al-Jundi v. Estate of Nelson Rockefeller,

885 F.2d 1060, 1065 (2d Cir. 1989); Moffitt v. Brookfield, 950 F.2d 880, 886 (2d Cir. 1991).

Here, Boganski has produced no evidence of a news article regarding his arrest, let alone

evidence that Flaherty had anything to do with such an article.  To the contrary, Boganski has

conceded that he has "never seen" the newspaper article upon which he is basing his claim.

(Boganski Tr. at 222, 234-35).  Rather, he was assuming news of his arrest appeared in the police

blotter of the Hartford Courant or Middletown Press.  (Id.)  Boganski's assumption is based on

something allegedly told to him by one, unidentified customer (the only person ever to mention

his arrest to him).  (Id.)[4]  Accordingly, judgment should enter in favor of Flaherty on the right of

privacy claim.

---

[4]/     Hearsay testimony by Boganski is not admissible and cannot defeat summary judgment.
Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1985).
He has no personal knowledge of a news article regarding his arrest or evidence that Flaherty had
anything to do with the alleged article.  To the extent that Boganski relies on the hearsay
statement, Flaherty will object and will move to strike it.  See Fed. R. Evid. 802.

**B.    The Plaintiff Has Failed To Establish An Unreasonable Search And Seizure Claim**

The Constitution does not forbid all searches and seizures but rather, only unreasonable searches and seizures.  United States v. Gori, 230 F.3d 44, 49 (2d Cir. 2000).  Thus, the Fourth Amendment does not make the home a sanctuary from reasonable investigations by the police.  Id. at 51.  Accordingly, the central inquiry under the Fourth Amendment becomes reasonableness under the circumstances.  Id. at 54.

Boganski's claim of a constitutional violation based on Flaherty's entry into his home is misplaced.  A warrantless entry does not violate the Fourth Amendment if the authorities have obtained the consent of a person authorized to grant such consent.  United States v. Medina, 301 F.Supp. 2d 322, 330 (S.D.N.Y. 2004) (citing cases).  The inquiry is guided by an objective standard and the question is whether the officer had a reasonable basis for believing that there was consent.  See id.  In the instant case, it is undisputed that Boganski "invited" Flaherty into his home.  (Boganski Tr. at 102)  Thus, Flaherty's entry was consensual and he is entitled to summary judgment on Boganski's search and seizure claim.

Boganski's claim that his constitutional rights were violated as a result of his house allegedly having been searched and his cars having been "looked in" are also misplaced.  A warrantless search of a residence is reasonable if it falls within one of the established exceptions to the warrant requirement.  United States v. Miller, 306 F.Supp. 2d 414, 416 (S.D.N.Y. 2004).  In Maryland v. Buie, 494 U.S. 325 (1990), the Supreme Court held that officers arresting a suspect in the latter's home have an interest analogous to that protected in Terry v. Ohio, 392 U.S. 1 (1968) and Michigan v. Long, 463 U.S. 1032 (1983), and may look about the home "to assure themselves that the house in which the suspect is being or has just been arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack."

9

Buie, 494 U.S. at 333.  The Court recognized also that, "unlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his adversary's 'turf.'  An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings."  Id.  Accordingly, the Court held not only that the officer in question was justified in looking in the basement whence had come the defendant and where the officer then saw incriminating evidence in plain view, but also "that as an incident to the arrest the officer could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could immediately be launched."  Id.  See United States v. Smith, 2004 WL 574641, at *5 (S.D.N.Y. Mar. 23, 2004). [5]

The "protective sweep" authorized under Buie is a quick and limited search of premises, incident to an arrest conducted to protect the safety of police officers or others.  Buie, 494 U.S. at 327.  It includes a cursory visual inspection of those places in which a person might be hiding. Id.  A protective sweep is permissible where the searching officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from

---

[5]/      In connection with the Buie analysis, a district court recently took "judicial notice" that

> policemen are very frequently put in grave personal danger and, consequently, take precautionary measures that to a layman may seem unnecessary but laymen have not been exposed to the same dangers and, then, the Court cannot use their standards in judging the reasonableness of [a] policem[a]n's actions.

Smith, 2004 WL 574641, at *5.  The Smith court recognized that it was "not a case where a reasonable police officer would conclude the premises were clearly secure and decide to do an evidentiary search in the guise of a protective search."  Id.  See United States v. Big Apple Bag Co., Inc., 2004 WL 1059775, at *7 (E.D.N.Y. May 7, 2004) ("a finding that the very limited search such as that conducted by Special Agent Scartozzi violated the defendants' fourth amendment rights would place law enforcement officers' lives at risk.").

those facts, reasonably warrants the officer in believing that the area swept harbored an

individual posing a danger to the officer or to others.  Id.

Factors to be considered as part of the Buie analysis include whether an officer was

aware of how many individuals were present in the home, see Smith, 2004 WL 574641, at *5,

and whether the officer was securing the premises.  See Leaks v. United States, 841 F.Supp. 536,

542 (S.D.N.Y. 1994), aff'd 47 F.3d 1157 (2d Cir. 1995).  In other words, the issue is whether

remaining on the property to secure the premises was objectively reasonable.  Leaks, 841

F.Supp. at 542.

In the instant case, with regard to the alleged search of his home, Boganski has no

evidence that Flaherty engaged in anything other than a proper "protective sweep," as authorized

under Buie.  He has conceded that he did not see either Flaherty or Augeri search either his

house or his car.  (Boganski Tr. at 183)  He bases his claim extensively on his belief that some of

his things were moved.  (Id.)  Conversely, his friend, Rodriguez testified that the officers were in

Boganski's house for 6 to 8 minutes.  (Rodriguez Tr. at 54, 60)  This confirms that the protective

sweep was brief.  Moreover, Rodriquez did not testify that he saw Flaherty look in Boganski's

car.  Rather, he maintained that it was his car that was looked in.  (Id. at 52, 54)  Boganski's

speculation is not sufficient to establish a violation of Buie.  Nor is it sufficient to defeat

summary judgment.

As discussed above, a review of Flaherty's and Augeri's deposition testimony confirms

that they did not "look in" Boganski's car and that any search of the house was a cursory

protective sweep.  (Flaherty Tr. at 48-49; Augeri Tr. at 40-41)  In fact, consistent with Buie, they

had an articulable basis to conduct a "protective sweep."  Specifically, they did not know if

anyone else was in the house and properly surveyed the house to determine (in light of the

11

struggle that had just taken place) whether anyone else was in the house who might pose a threat and to secure the house in light of the arrest of the owner.  (Flaherty Tr. at 48-49; Augeri Tr. at 21-23, 25, 40)  Such a cursory protective sweep was objectively reasonable under Buie and the cases which have applied it.  Moreover, this Court should take judicial notice, as the Smith court did, to the life-threatening situation faced by law enforcement officers such as Flaherty.  2004 WL 574641, at *5.  There is no evidence that Flaherty did anything other than a cursory search/security check to determine if anyone else was in the house and to secure the premises.  A holding penalizing such conduct would place law enforcement officers' lives in danger.  See Big Apple Bag, 2004 WL 1059775, at *7.  Accordingly, the Court should enter judgment in favor of Flaherty.

### C.    The Plaintiff Has Failed To Establish A False Arrest Claim

Boganski's false arrest claim is based on a misunderstanding of the governing law. Specifically, his claim is based on his assertion that he did not do anything wrong.  (Boganski Tr. at 122)  Such a claim confuses or ignores the relevant analysis.

To establish a claim under § 1983 for false arrest, a plaintiff must prove that: (1) the defendant intended to confine him; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and (4) the confinement was not otherwise privileged.  Singer v. Fulton County Sheriffs, 63 F.3d 110, 118 (2d Cir. 1985); Carson v. Lewis, 35 F.Supp. 2d 250, 257 (E.D.N.Y. 1999).  It is well established that there can be no federal civil rights claim for false arrest where the arresting officer had probable cause.  Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); Doe v. Bridgeport Police Dep't., 198 F.R.D. 325, 335 (D. Conn. 2001); Mistretta v. Prokesch, 5 F.Supp. 2d 128, 133 (E.D.N.Y. 1998).

Probable cause is a fluid concept -- turning on the assessment of probabilities in a particular factual context -- not readily, or even usefully, reduced to a neat set of legal rules. Illinois v. Gates, 462 U.S. 213, 232 (1983).  It exists "when the arresting officer has knowledge or reasonable trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  Lee v. Sandberg, 136 F.3d 94, 102-03 (2d. Cir. 1997); Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995).  Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.  Gates, 462 U.S. at 243-44 n.13; Cohen v. Dubuc, 2000 WL 1838351, *4 (D. Conn. Nov. 28, 2000).  Accordingly, the question is not what information might have been developed from further investigation, but whether the facts known when, and on which the police officer acted were sufficient to constitute probable cause.  Warren v. Dwyer, 906 F.2d 70, 73 (2d Cir. 1990).  Thus, a suspect's denial of criminal behavior does not require a police officer to forego an arrest if the facts otherwise establish probable cause.  Mistretta, 5 F.Supp. 2d at 135. Similarly, probable cause can exist even where it is based on mistaken information.  Bulanov v. Meehan, 2002 WL 181365, at *4 (S.D.N.Y. Feb. 6, 2002).  See McKinney v. George, 726 F.2d 1183, 1187 (7th Cir. 1984).

Conn. Gen. Stat. § 53a-181(a) provides that a person is guilty of breach of the peace:

> When, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any action which he is not licensed or privileged to do; or (7) places a nonfunctional imitation of an explosive or incendiary device in a public place.  For purposes of this section, "public

place" means any area that is used or held out for use by the public whether owned or operated by public or private interests.

Under Connecticut law, a "person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties." Conn. Gen. Stat. § 53a-167a(a). By enacting § 53a-167a, the legislature sought to prohibit behavior that hampers the activities of the police in the performance of their duties. State v. Beckenbach, 1 Conn. App. 669, 679 (1984), rev'd on other grounds 198 Conn. 43 (1985). The statute's purpose is to ensure orderly compliance with the police during the performance of their duties; any act which thwarts this purpose violates the statute. Id.[6]

The phrase "in the performance of his official duties" means that the police officer is simply acting within the scope of what he is employed to do. State v. Privitera, 1 Conn. App. 709, 722 (1984). Thus, a person is not justified in interfering with an arrest or investigation even if the arrest or investigation is later determined to be illegal. See Smith v. City of New Haven, 166 F. Supp. 2d 636, 644 (D. Conn. 2001); United States v. Crump, 62 F. Supp. 2d 560, 569 (D. Conn. 1999). See also State v. Carroll, 13 Conn. Supp. 112 (1944) (attempt to elude officers constitutes interfering).

The issue before the court is not whether Boganski was guilty of any crime. Rather, it was whether Flaherty had probable cause to arrest him. He did. It is irrelevant whether a breach of the peace or interference had actually occurred. See Smith, 166 F. Supp. 2d at 644.

---

[6]/    In order to accomplish its purpose, the language in the statute has a very "broad scope." Id. It defines "interference" to encompass a variety of activities that fall short of actual confrontation or physical contact with police officers, for example "hindering" or "obstructing." Herpel v. Joyce, 1992 WL 336765, at *5 (D. Conn. Sept. 30, 1992). "The plain meaning of these terms indicates that a person can violate this statute through passive resistance as well as through active obstruction." Id.

It is well-established that a law enforcement official has probable cause to arrest if he received information from the putative victim or eyewitness.  Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000); Singer, 63 F.3d at 119; Szekeres v. Schaeffer, 2004 WL 722240, at *6 (D. Conn. Mar. 26, 2004); Mistretta, 5 F.Supp. 2d at 133 (If a victim "signs a complaint accusing another, the officer generally has probable cause to arrest.").  Indeed, one eyewitness is enough to establish probable cause.  See Woods v. City of Chicago, 234 F.3d 979, 997 (7th Cir. 2000); Martinez, 202 F.3d at 634; Torchinsky v. Siwinski, 942 F.2d 257, 261-62 (4th Cir. 1999); Grimm v. Churchill, 932 F.2d 674, 675 (7th Cir. 1991).  Once a police officer has probable cause, he need not explain away every theoretical possible claim of innocence before making an arrest.  Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).

In the instant case, Flaherty had probable cause to arrest Boganski for both breach of the peace and interference.  He had a complaint from the victims, which was memorialized into a signed statement by one of them.  Specifically, the information he received from the Martins regarding Boganski's misconduct amounted to a violation of § 53-181.  (Flaherty Tr. at 31-32, 67 (based probable cause determination on statement and information from victims))  Flaherty was also entitled to factor in Boganski's failure to call the police, despite his statement that his attorney had advised him to call if he was subjected to any mistreatment by his neighbors.  (Id. at 36, 40)  Any denials of wrongdoing by Boganski were irrelevant to the determination of probable cause.

Flaherty also had probable cause to arrest Boganski for interference.  It is undisputed that Boganski did not fully comply with Flaherty's arresting him either via a MSC or via an in-custody arrest.  Instead of fully complying, Boganski wanted another officer or supervisor present.  (Boganski Tr. at 105; 9/16/00 MPD Supp. Report)  He grabbed for and/or pushed

towards the telephone receiver. (Rodriguez Tr. at 35, 41, 46, 70; Boganski Tr. at 107-08)

Boganski did not have a right to be arrested by the officer of his choosing, or to insist upon

another officer or supervisor being present. The suggestion that an arrestee can insist that

another officer or supervisor be present before an arrest occurs is ludicrous, and to require such

would paralyze and endanger police officers at the very moment they are performing their duty.

By not fully complying, Boganski obstructed, resisted, hindered or endangered Flaherty in the

performance of his duties. Thus, Flaherty had probable cause to arrest Boganski for interference.

Moreover, the court's probable cause analysis is not limited to the charges of breach of

the peace and interference. Even if Flaherty was incorrect in the statutory provisions he relied

upon to charge Boganski, his belief that he had probable cause to arrest Boganski was well-

grounded under the circumstances. See Wachtler v. County of Herkimer, 35 F.3d 77, 80 (2d Cir.

1984). "Probable cause need only exist as to any offense that could be charged under the

circumstances." Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). See Soltez v.

City of Sandusky, 2001 WL 1130574, at **2-3 (N.D. Ohio Mar. 25, 2001), aff'd 2002 WL

31371980 (6th Cir. Oct. 15, 2002). Thus, as long as Flaherty had some reasonable basis to

believe Boganski had committed a crime, the arrest was justified as being based on probable

cause. Barna, 42 F.3d at 819; Wachtler, 35 F.3d at 80. For example, Boganski could have also

been charged with disorderly conduct. A person is guilty of disorderly conduct under

Connecticut law:

> [w]hen, with intent to cause inconvenience, annoyance or alarm, or
> recklessly creating a risk thereof, such person: (1) engages in
> fighting or in violent, tumultuous or threatening behavior; or (2) by
> offensive or disorderly conduct annoys or interferes with another
> person; or (3) makes unreasonable noise ….

Conn. Gen. Stat. § 53a-182. <u>See</u> <u>Zandhri v. Dortenzio</u>, 228 F.Supp. 2d 167, 172 (D. Conn. 2002). Disobeying a police officer's direct order constitutes disorderly conduct. <u>Szekers</u>, 2004 WL 72240, at *6. Thus, because Flaherty had probable cause to arrest Boganski, the entry of summary judgment on the false arrest claim is proper.

### D. The Plaintiff Has Failed To Establish A Violation Of The Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment commands that "all persons similarly situated … be treated alike." <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985). <u>See</u> <u>Cobb v. Pozzi</u>, 363 F.3d 89, 110 (2d Cir. 2004); <u>Harlen Assocs. v. The Incorporated Village of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001). An equal protection claim may be brought by a "class of one" where the plaintiff proves that he has been treated differently from others similarly situated and that there is no rational basis for the difference in treatment. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564-65 (2000) (per curiam). Before <u>Olech</u>, the Second Circuit permitted selective treatment claims based on a "class of one" if the plaintiff proved both: (1) that he was treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to injure or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. <u>Harlen</u>, 273 F.3d at 499; <u>LaTrieste Rest. & Cabaret v. Village of Portchester</u>, 40 F.3d 587, 590 (2d Cir. 1994). <u>See</u> <u>Cobb</u>, 363 F.3d at 110.

In <u>Harlen</u>, the Second Circuit assumed without holding that plaintiffs who establish differential treatment could state an equal protection claim by showing "either that there was no rational basis for the unequal treatment received, or that the unequal treatment was motivated by animus." 273 F.3d at 500. <u>See</u> <u>Giordano v. City of New York</u>, 274 F.3d 740, 750-51 (2d Cir. 2001). If a plaintiff receives similar treatment as that afforded to similarly situated individuals,

he has no claim for equal protection.  Tuchman v. State of Conn., 185 F.Supp. 2d 169, 173 (D.

Conn. 2002).  See Giordano, 274 F.3d at 751.  Moreover, if no other similarly situated

individuals exist, then the plaintiff has no claim for equal protection.  Id.

     In the instant case, Boganski has failed to properly allege, let alone produce the evidence

to support an equal protection claim.  In particular, he cannot maintain a "class of one" claim.  A

review of the amended complaint reveals that he has not properly alleged the essential elements

of an equal protection claim.  More importantly, he has no evidence of either differential

treatment as compared to those similarly situated or assuming the existence of differential

treatment, that such treatment was based on a malicious or bad faith intent to injure him.[7]  An

equal protection claim based on bare allegations fails as a matter of law and summary judgment

is, therefore, appropriate.  This remains true even after Olech.  See, e.g., Tri-County Paving, Inc.

v. Ashe County, 281 F.3d 430, 439-40 (4th Cir. 2002); Giordano, 274 F.3d at 751-52; Hedrich v.

Board of Regents of the Univ. of Wisc. Sys., 274 F.3d 1174, 1183 (7th Cir. 2001); Harlen, 273

F.3d at 499-500; Jackson v. Burke, 256 F.3d 93, 96-97 (2d Cir. 2001).

---

[7]/     In Olech, the plaintiff alleged that the defendant Village intentionally demanded a 33-foot easement as a condition to connecting her property to the municipal water supply, while a 15-foot easement was demanded from similarly situated property owners.  528 U.S. at 565.  The Court did not address the theory of subjective ill will or malice relied upon by the Seventh Circuit below.  Id. at 563-65.  To date, the Second Circuit has declined to address whether Olech has removed the requirement of malice.  Giordano, 274 F.3d at 751; Harlen, 273 F.3d at 499-500.  If this court concludes that it is necessary to address this issue, it should require a plaintiff to prove vindictiveness or malice as part of an Equal Protection Clause claim.  The proof of this additional element has been adopted by the Fifth and Seventh Circuits.  Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir. 2000); Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2001).  It was also advocated by Justice Breyer in his concurring opinion in Olech.  528 U.S. at 565-66 (Breyer, J., concurring).  In the instant case, Boganski testified at his deposition that Flaherty did not say anything sexually derogatory to him and that his claims against Flaherty were based upon his physical treatment.  (Boganski Tr. at 122)  Accordingly, summary judgment is appropriate on this additional ground.

Here, Boganski's claim is based on no more than bare allegations and conclusory statements. He has failed to submit proof of either differential treatment or irrational actions. Accordingly, summary judgment is appropriate. See Presnick v. Town of Orange, 152 F.Supp. 2d 215, 225 (D. Conn. 2001).

Even interpreting Boganski's claim as a claim that his right to equal protection under law was violated because he was homosexual, summary judgment is still appropriate. The equal protection analysis of alleged discriminatory acts against homosexuals must be conducted pursuant to a rational basis test. Anderson v. Branen, 799 F.Supp. 1490, 1492 (S.D.N.Y.), aff'd 17 F.3d 552 (2d Cir. 1992). See Romer v. Evans, 517 U.S. 620, 632 (1996); Equality Found. of Greater Cincinnati, Inc. v. City of Cincinnati, 128 F.3d 289, 292-95 (6th Cir. 1997). Specifically, homosexuals are not a suspect class, and, accordingly, they are entitled only to rational basis scrutiny. See Romer, 517 U.S. at 632. In this case, as demonstrated above, Boganski has failed to allege, let alone demonstrate that he was treated differently than similarly situated heterosexual arrestees. Moreover, he has failed to demonstrate that his treatment was based upon a malicious or bad faith intent on the part of Flaherty. Accordingly, summary judgment is appropriate.

### E.     The Plaintiff Has Failed To Establish Constitutional Violations Based On An Alleged Failure To Give Miranda Warnings And Not Being Afforded A Telephone Call

A review of the first count reveals that the plaintiff has not asserted a constitutional claim based upon an alleged failure by Flaherty to give him the warnings required under Miranda v. Arizona, 384 U.S. 436 (1966). However, as noted above, in his interrogatory responses, Boganski referred to an alleged failure to receive Miranda warnings as a basis for his claims. Absent a proper allegation in the amended complaint, the Court should enter judgment in favor

of Flaherty.  To the extent that the Court believes it necessary to consider the substance of the

claim, it will find it to be without merit.

Simply stated, the claim that an officer failed to comply with <u>Miranda</u> does not state a

cause of action under 42 U.S.C. § 1983.  <u>Chavez v. Martinez</u>, 538 U.S. 760, 772 (2003);

<u>Deshawn E. v. Safir</u>, 156 F.3d 340, 346 (2d Cir. 1998); <u>Bennett v. Passic</u>, 545 F.2d 1260, 1263

(10th Cir. 1976); <u>Hanrahan v. City of Norwich</u>, 959 F.Supp. 118, 123 (D. Conn.), <u>aff'd</u> 133 F.3d

907 (2d Cir. 1997).  <u>See</u> <u>United States v. Patane</u>, 2004 WL 1431768, *5 (U.S. June 28, 2004)

("The <u>Miranda</u> rule is not a code of police conduct, and police do not violate the Constitution (or

even the <u>Miranda</u> rule, for that matter) by mere failures to warn.").  Here, it is undisputed that

Boganski was not compelled to testify at trial, thus his constitutional rights were not violated.

Accordingly, the Court should enter judgment in favor of Flaherty on any claim by Boganski

based on an alleged failure to be given <u>Miranda</u> warnings.

As noted above, although he did not assert such a claim in his amended complaint,

Boganski maintained in his interrogatory responses that his constitutional rights were violated

because he was not allowed to make a telephone call.  Absent a proper allegation in the amended

complaint, the Court should enter judgment in favor of Flaherty.  To the extent that the Court

believes it necessary to consider the substance of the claim, it will find it to be without merit.

There is no constitutional requirement that a telephone call be permitted upon completion

of booking formalities.  <u>See</u> <u>Harrill v. Blount County</u>, 55 F.3d 1123, 1125 (6th Cir. 1995) ("the

right to make a phone call immediately upon arrest is not a recognized property right, nor is it a

traditional liberty interest recognized by federal law."); <u>State Bank of St. Charles v. Camic</u>, 712

F.2d 1140, 1145 n.2 (7th Cir. 1983).  The Sixth Amendment provides an accused with the right

to an attorney with the auxiliary right to call an attorney.  <u>Ledbetter v. Board of County</u>

Commissioners, 2001 WL 705806, at *2 (D. Kan. May 31, 2001). This right does not attach, however, until at or after the initiation of adversary juridical criminal proceedings - whether by way of formal charge, preliminary hearing, indictment, information or arraignment. Id. Here, there was no adversarial proceeding before or during Boganski's brief detention. It is undisputed that Boganski was released after a few hours. Specifically, he testified that he had arrived home that afternoon between 2-2:30 p.m. and that he was released from the MPD at approximately 5:30 p.m. (Boganski Tr. at 98, 231) No proceedings were conducted against him while he was at the MPD. Thus, Boganski cannot establish a violation of a constitutional right. Id.[8]

Moreover, even assuming for the sake of argument that Boganski had a constitutional right to make a telephone call, he has not established either that he requested the opportunity to make a call or that Flaherty was the individual who denied him access to a telephone. Absent Flaherty's personal involvement in an alleged constitutional violation, he cannot be liable. Al-Jundi, 885 F.2d at 1065.

## II.    THE PLAINTIFF'S FEDERAL CONSTITUTIONAL CLAIMS ARE BARRED BY QUALIFIED IMMUNITY

### A.    General Principles

Under the qualified immunity doctrine, government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known. Mitchell v. Forsyth, 472 U.S. 511, 524 (1985). Qualified immunity strikes a balance between the

---

[8]/    See Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986) (no sixth amendment right to call an attorney before formal charges); Fillmore v. Ordonez, 829 F.Supp. 1544, 1563 (D. Kan. 1993) (no right to call counsel prior to arraignment), aff'd, 17 F.3d 1436 (10th Cir. 1994). See also Bullock v. Dioguardi, 847 F.Supp. 553, 562-63 (N.D. Ill. 1993); Pritchard v. Downie, 216 F.Supp. 621, 630 (E.D. Ark. 1963) (rejecting as "frivolous" claim of constitutional violation for not being allowed to make a phone call where plaintiffs were released on bond after six hours), aff'd 326 F.2d 323 (8th Cir. 1964).

need to provide a means for the vindication of constitutional guarantees and the societal costs

that inhere in litigation against public officials, including "the danger that fear of being sued will

'dampen the ardor of all but the most resolute or the most irresponsible [public officials], in the

unflinching discharge of their duties.'" Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982). A

government official is entitled to qualified immunity in any of three circumstances: (1) if the

conduct attributed to him is not prohibited by federal law; (2) where that conduct is so

prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not

"clearly established" at the time of the conduct; or (3) if the defendant's action was objectively

reasonable in light of the legal rules that were clearly established at the time it was taken. X-

Men Security Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir. 1999). The qualified immunity analysis

is to be approached sequentially. Ehrlich v. Town of Glastonbury, 348 F.3d 48, 54-57 (2d Cir.

2003). Accordingly, the first step in the analysis is to determine whether the plaintiff has alleged

the deprivation of an actual constitutional right at all. Saucier v. Katz, 533 U.S. 194, 201 (2001);

Conn. v. Gabbert, 526 U.S. 286, 290 (1999). If the plaintiff has alleged a violation against the

defendant at issue, the court proceeds to the second prong and if necessary, to the third prong of

the analysis. See id.

Whether the law was "clearly established" is a pure question of law for the court to

decide. Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir. 1994).[9] A right is only clearly

established if (1) it is defined with reasonable clarity; (2) the Supreme Court or the Second

Circuit has affirmed its existence or (3) a reasonable defendant would understand from existing

---

[9]/    As part of this analysis, the right allegedly violated must be defined at the appropriate
level of specificity before a court can determine if it was clearly established. Wilson v. Layne,
526 U.S. 603, 615 (1999). In determining whether the constitutional right at issue was clearly
established, courts should define the right with a "high level of particularity." See Edwards v.
City of Goldsboro, 178 F.3d 231, 250-51 (4th Cir. 1999).

law that his acts were unlawful.  <u>Mrosek v. Kraatz</u>, 178 F. Supp. 2d 104, 107 (D. Conn. 2001).

Thus, for a constitutional right to be clearly established, its contours must be sufficiently clear

that a reasonable official would understand that what he is doing violates that right.  <u>Hope v.

Pelzer</u>, 536 U.S. 730, 739 (2002).  Accordingly, an official's actions are immune unless in light

of pre-existing law, the unlawfulness of the act is apparent.  <u>Id.</u>

An official's conduct is objectively reasonable where reasonable officials could disagree

about whether the conduct was correct.  <u>Carson</u>, 35 F. Supp. 2d at 265.  When reasonable

officials could disagree, qualified immunity protects an officer from suit.  <u>See id.</u>

### B.        Qualified Immunity Applied

#### 1.        The Right to Privacy Claim

Even assuming arguendo that the Court were to find that a constitutional right of privacy

not to have the fact of one's arrest made public, which as demonstrated above there is not,

Flaherty is entitled to qualified immunity on such a claim.  In particular, it is undisputed that any

right was not "clearly established" at the time of Boganski's arrest.  Thus, even if it is assumed

(1) that there was a news article and (2) that Flaherty had something to do with the publication of

the article, he can not be held liable for it under the doctrine of qualified immunity.  <u>See</u> <u>Smith v.

Coughlin</u>, 727 F.Supp. 834, 841-42 (S.D.N.Y. 1989).

Moreover, given that a report on Boganski's arrest would be true, reasonable officers

could at a minimum, disagree about whether providing truthful, public information to a

newspaper was correct.  As such, assuming he provided information, any conduct by Flaherty

would have been objectively reasonable and he is protected by qualified immunity on the privacy

claim.

### 2. The False Arrest Claim

In the context of a false arrest claim, the Second Circuit has recognized that a police officer is entitled to qualified immunity from suit without probable cause if either (1) it is objectively reasonable for the officer to believe that probable cause existed, or (2) officers of reasonable competence could disagree on whether the probable cause test was met. Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004); Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987); Szekeres, 2004 WL 722240, at *5. Thus, an officer sued for having made an arrest without probable cause is entitled to qualified immunity if there was "arguable" probable cause for the arrest, which is a more lenient standard than probable cause. Escalera, 361 F.3d at 743; Knight v. Jacobson, 300 F.3d 1272, 1274 (11th Cir. 2002); Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002). Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law. Lee, 136 F.3d at 102; Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997). Evidence before a court might be insufficient to sustain a finding of probable cause yet be adequate for the judge to conclude it was reasonable for the police officer to believe that he had a good basis for his actions. Magnotti v. Kuntz, 918 F.2d 364, 367-68 (2d Cir. 1990).

Thus, under the qualified immunity analysis, mistaken judgments concerning probable cause are protected so long as they are reasonable. Anderson v. Creighton, 483 U.S. 635, 641 (1987); Bulanov, 2002 WL 181365, at *5. Whether under the circumstances a reasonable officer could believe probable cause for an arrest existed, thus giving rise to qualified immunity, is a question of law. Sharrar v. Felsing, 128 F.3d 810, 827 (3d Cir. 1997).

As discussed above, there was probable cause to arrest Boganski for at least, breach of the peace, interference and disorderly conduct. At a minimum, even if the Court disagrees with the analysis set forth above, there was "arguable" probable cause to arrest Boganski. Thus, Flaherty is entitled to qualified immunity on the false arrest claim.

### 3.    The Search and Seizure Claim

As demonstrated above, Boganski did not have a constitutional right to not have his home or car subjected to a protective sweep. As such, Boganski has failed to establish his claim and Flaherty is entitled to qualified immunity. Even if the Court were to conclude that Boganski did have a right not to have his house or car subjected to a protective sweep, no such right was clearly established under the relevant case law as of September 16, 2000. Finally, even if such a right was clearly established on the date at issue, the conduct alleged by Boganski was objectively reasonable in that reasonable officers could disagree about the scope of the protective sweep. For example, Augeri testified that police officers did not need a warrant to conduct a cursory search to determine if anyone else was present in the house and to determine what to do to secure it in light of Boganski being taken into custody. (Augeri Tr. at 21-25, 40-41) Accordingly, Flaherty is entitled to qualified immunity on the search and seizure claim.

### 4.    The Equal Protection Claim

Flaherty would also be entitled to qualified immunity on the equal protection claim because there was no clearly established constitutional right to select the police officer of one's choosing to conduct an investigation or arrest or to have another officer or supervisor present during an interview or arrest. Moreover, Flaherty's conduct under the circumstances was objectively reasonable.

**5.    The <u>Miranda</u> Warnings Claim**

Even assuming for the sake of argument, that the Court were to hold that Boganski had

some constitutional right to receive <u>Miranda</u> warnings under the circumstances at issue, which as

demonstrated above, he did not, Flaherty would be entitled to qualified immunity because any

such right was not "clearly established" at the time of Boganski's arrest and because Flaherty's

conduct under the circumstances was objectively reasonable.  At a minimum, reasonable officers

could disagree whether <u>Miranda</u> warnings were required under the circumstances at issue.

**6.    The Telephone Call Claim**

Even assuming arguendo that Boganski had a constitutional right to make a telephone

call at the time at issue, which as demonstrated above, he did not, Flaherty is entitled to qualified

immunity.  Specifically, any right to make a telephone call was not "clearly established" on the

date of Boganski's arrest.  <u>See</u> <u>O'Hagan v. Soto</u>, 725 F.2d 878, 879 (2d Cir. 1984) (per curiam)

(recognizing qualified immunity was appropriate because of the uncertainty as to whether the

right to counsel had attached at the time at issue).  Moreover, the, processing and releasing of

Boganski on a bond within a few hours, was objectively reasonable under the circumstances.  At

a minimum, reasonable officers could disagree about whether allowing a telephone call

(assuming one was requested) was required.  Accordingly, Flaherty is entitled to qualified

immunity.

**III.    THE PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS ARE WITHOUT MERIT**

**A.    The Plaintiff Has Failed To Establish A Violation Of His Right To Privacy**

Notably absent from Boganski's amended complaint is a citation to a provision in the

Connecticut Constitution that provides for a right to personal privacy.  <u>See</u> <u>Binette v. Sabo</u>, 244

Conn. 23, 33, 35, 46 (1998)(to date, causes of action have only been recognized under two

sections of Constitution).  In fact, the Connecticut Constitution does not provide for a right of personal privacy.  Pane v. City of Danbury, 2002 WL 31466332, at *3 (Conn. Super. Oct. 18, 2002), aff'd 267 Conn. 669 (2004).[10]  Moreover, "Connecticut courts have rejected requests to recognize causes of action under the state constitution which did not exist when the constitution was adopted in 1818."  Id.  The tort of invasion of privacy was first recognized in Connecticut in 1959.  Id.

To the extent the Court interprets the Connecticut Constitution as including a right of personal privacy, it is submitted that such a right would not extend beyond that recognized in the federal constitution or by the common law.  In particular, the transmission of public information such as the arrest of an individual should not be prohibited under the Connecticut Constitution.  See Tucker v. Bitoni, 34 Conn. Supp. 643, 647 (App. Sess. 1977).  See also Paul, 424 U.S. at 713.

Even if the transmission of information regarding a public act, such as an arrest, was prohibited by the Connecticut Constitution, in order to be liable, a defendant would have to have been personally involved in the violation of the constitutional right.  Here, Boganski has not produced the alleged police blotter article which he is complaining about, let alone established that either Flaherty or Middletown was responsible for the publication of any such article.  Accordingly, the court should enter judgment in favor of Flaherty and Middletown on Boganski's claim of violation of his right to privacy under the Connecticut Constitution.

**B.    The Plaintiff Has Failed To Establish An Unreasonable Search and Seizure Claim**

Boganski's claim for unlawful search and seizure under the Connecticut Constitution is without merit.  Article First, § 7 of the Connecticut Constitution provides in relevant part as

---

[10]/    The trial court's ruling in Pane was not challenged on appeal.  267 Conn. at 673 n.6.

follows:  "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; …"  "A warrantless search or entry into a house is not unreasonable … under the Fourth Amendment … or article first, § 7, of the Connecticut Constitution when a person with authority to do so has freely consented."  <u>State v. Rodriguez</u>, 49 Conn. App. 699, 700 (1998) (per curiam).  As discussed above, it is undisputed that Boganski "invited" Flaherty into his house.  It was also reasonable for Flaherty to enter Boganski's home to investigate the complaint made by the Martins.  Accordingly, the Court should enter judgment in favor of Flaherty and Middletown on any claim based upon Flaherty's entry into Boganski's home.

Judgment should also be entered as to Boganski's claim that his home and cars were searched after his arrest.  Article First, § 7 does not mandate a stricter standard than the Fourth Amendment.  <u>State v. Glenn</u>, 251 Conn. 567, 573 (1999).  Like federal law, Connecticut law recognizes the exceptions to a warrant of a search incident to an arrest, <u>State v. Waller</u>, 223 Conn. 283, 289 n.5 (1992), and a "protective sweep."  <u>State v. Outlaw</u>, 70 Conn. App. 160, 168 n.7 (2002).  Thus, for the reasons discussed above in connection with the federal search and seizure claim, the Court should enter judgment in favor of Flaherty and Middletown.

### C.    The Plaintiff Has Failed To Establish A False Arrest Claim

Boganski's amended complaint does not identify the provision from the Connecticut Constitution upon which he bases his state, constitutional false arrest claim.  Article First, § 7 does not mandate a stricter standard for the determination of probable cause.  <u>See</u> <u>Glenn</u>, 251 Conn. at 573.

In order to establish a claim for false arrest under Connecticut state law, a plaintiff must prove by a preponderance of the evidence that there was no probable cause for his arrest.

Beinhorn v. Saraceno, 23 Conn. App. 487, 491-92 (1990).  As demonstrated above in detail,

Flaherty had probable cause to arrest Boganski.  Accordingly, the false arrest claim should be

dismissed as a matter of law.  See State v. Anonymous, 34 Conn. Supp. 275, 277 (1978)

(probable cause for an arrest may exist where an unknown citizen makes a complaint, as a victim

or eyewitness to a crime).

### D.     The Plaintiff Has Failed To Establish An Equal Protection Claim

Boganski's equal protection claim under the Connecticut Constitution is without merit.

Applying Binette v. Sabo, 244 Conn. 23 (1998), Connecticut courts have refused to recognize an

equal protection claim for damages under the state constitution.  See Prigge v. Ragalia, 2003 WL

23177403, at **3-5 (Conn. Super. Dec. 18, 2003)(striking equal protection claim under Article

First, § 20); Boudreau v. City of Middletown, 1998 WL 321858, at *3 (Conn. Super. June 9,

1998)(striking claims under Article First, §§ 1, 20).  Accordingly, the Court should enter

judgment in favor of Flaherty and Middletown.

Even assuming for the sake of argument that the Court concludes that an equal protection

claim can be asserted under the Connecticut Constitution, Boganski's claim fails as a matter of

law.  At the outset, his reliance on Article first, § 1 is misplaced.  It provides as follows:

> All men when they form a social compact, are equal in rights; and
> no man or set of men are entitled to exclusive public emoluments
> or privileges from the community.

Thus, on its face the section does not apply to the circumstances at issue.  "This constitutional

provision prohibits the adoption of legislation that has no public purpose but operates to confer

private gain on an individual or group."  Beccia v. City of Waterbury, 192 Conn. 127, 134

(1984).  See Chotkowski v. State, 240 Conn. 246, 257-58 (1997).  Accordingly, the Court should

enter judgment in favor of Flaherty and Middletown on any claim based on Article First, § 1.

Boganski's claim based on Article First, § 20 fares no better.  Article First, § 20 of the Connecticut Constitution provides as follows:

> No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability.

Generally speaking, the equal protection analysis under the Connecticut Constitution is identical to the analysis under the federal constitution.  See City Recycling, Inc. v. State, 257 Conn. 429, 444 (2001); State v. Henton, 50 Conn. App. 521, 536 (1998).  The equal protection provisions in the Connecticut Constitution require "the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged." Broadley v. Board of Educ., 229 Conn. 1, 8 (1994).  In other words, the equal protection of the laws prohibits "the unequal treatment of those who are similarly situated." Golab v. City of New Britain, 205 Conn. 17, 25 (1987).  However, an equal protection claim based on unequal application of the law cannot arise from conclusory allegations regarding past decisions, but rather must be established by competent evidence.  Id. at 26.  "There must be a showing of intentional or purposeful discrimination." Id.  As demonstrated above, Boganski has not properly alleged an equal protection claim and has provided no evidence of differential treatment from another similarly situated person.  Accordingly, the Court should enter summary judgment in favor of Flaherty and Middletown.

## IV.    THE PLAINTIFF'S COMMON LAW AND STATE STATUTORY CLAIMS ARE WITHOUT MERIT

### A.    The Plaintiff Has Failed To Establish A False Arrest Claim

As discussed above in detail, Flaherty had probable cause to arrest Boganski.  Thus, like his federal and state constitutional claims, Boganski's common law false arrest claim fails as a

matter of law.  Beinhorn, 23 Conn. App. at 491-92.  Accordingly, the court should enter summary judgment in favor of Flaherty and Middletown.

### B.    The Plaintiff Has Failed To Establish A Claim For Intentional Infliction Of Emotional Distress

Under Connecticut law, in order to establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's distress; and (4) the distress sustained by the plaintiff was severe.  Myers v. Bunker Ramo Corp., 1992 WL 88166 at *8 (D. Conn. Jan. 21, 1992) (Cabranes, J.), aff'd 979 F.2d 846 (2d Cir. 1992); DeLaurentis v. City of New Haven, 220 Conn. 225, 266-67 (1991); Petyan v. Ellis, 200 Conn. 243, 253 (1986).  A defendant may be found liable for intentional infliction of emotional distress only "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Myers, 1992 WL 88166, at *8 (citation and internal quotations omitted).  Mere insult, indignities, or annoyances will not suffice.  Wiggins v. Connecticut, 2000 WL 436615, at *6 (D. Conn. Mar. 15, 2000).  The standard in Connecticut to demonstrate extreme and outrageous conduct is "stringent."  Huff v. West Haven Bd. of Educ., 10 F.Supp.2d 117, 122 (D. Conn. 1998).  Mere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress.  Id.  Whether a defendant's conduct rises to the level of being "extreme and outrageous" is a question to be determined by the court in the first instance.  Myers, 1992 WL 88166, at *8.

In the instant case, Boganski's characterization of Flaherty's conduct is irrelevant. As a matter of law, Flaherty's conduct was neither extreme nor outrageous. As demonstrated above, his conduct under the undisputed circumstances, was objectively reasonable. He was alone in a suspect's house and had to deal with the suspect, while keeping an eye on Rodriguez and a lookout for any other persons who might have been in the house. Boganski did not comply with Flaherty's request to accept the MSC. Rather, Boganski wanted another officer or supervisor present and grabbed for and/or pushed towards the telephone receiver. He was also yelling towards Rodriguez. Under these circumstances, it was objectively reasonable for Flaherty to take Boganski into custody and to use the force necessary to effectuate the arrest. Boganski's characterizations of the force used notwithstanding, it is undisputed that any injuries suffered were de minimus. With regard to Middletown, Boganski has not alleged any conduct on its part or theory of liability. Thus, Flaherty and Middletown are entitled to judgment as a matter of law.

Moreover, in the absence of any type of medical or mental health treatment, any mental distress claimed by Boganski cannot be considered of a "very serious kind." DeLaurentis, 220 Conn. at 267. See Reed v. Signode Corp., 652 F.Supp. 129, 137 (D. Conn. 1986). General stress and dreams, (Boganski Tr. at 118), which do not require medical treatment or involve an infliction to an extraordinary degree are insufficient to defeat summary judgment. See Reed, 652 F. Supp. at 137 (without medical treatment for emotional distress, the plaintiff could not withstand summary judgment.). Absent severe mental distress, Boganski's claim fails as a matter of law.

**C.    The Plaintiff Has Failed To Establish An Invasion Of Privacy Claim**

The Connecticut Supreme Court first recognized the action of invasion of privacy in Goodridge v. Waterbury Republican-American, Inc., 188 Conn. 107 (1982). The right to privacy

protects a person's right to be secure from: (1) unreasonable intrusion upon seclusion; (2)

appropriation of one's nature or likeness, (3) unreasonable publicity given to one's private life,

and (4) publicity that places one in a false light before the public. Id. at 128. See 1 Daniel C.

Pope, Connecticut Actions and Remedies, § 11:01 at 11-4 (1996) (hereinafter "Pope").

Based on Boganski's amended complaint, it is the first and fourth strands of the right to

privacy which are at issue in this case. The first strand of the right to privacy recognizes the

right to be secure from unreasonable intrusion upon one's physical solitude or seclusion. See

Pope, § 11:02 at 11-5. An action for unreasonable intrusion is viable when the defendant invades

the plaintiff's physical or mental solitude in a location where the plaintiff has a right to expect

that such solitude will be undisturbed. Id. Liability may exist if the defendant should have

realized that his or her conduct would be offensive to a person of ordinary sensibilities. Id. A

claim for unreasonable intrusion will not, however, be viable if the defendant has acted with

consent, authority of law, or under a privilege. Id., § 11:04 at 11-11. See Tucker, 34 Conn.

Supp. at 647-48.[11]

In order to establish invasion of privacy by false light, a plaintiff must show that "(a) the

false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized

matter and the false light in which the other would be placed." Goodridge, 188 Conn. at 131.

See Pope, § 11:02 at 11-7. The essence of a false light privacy claim is that the matter published

concerning the plaintiff (1) is not true; and (2) is such a major misrepresentation of his character,

history, activities or beliefs that serious offense may reasonably be expected to be taken by a

---

[11]/     Moreover, a claim for unreasonable intrusion will not lie if the defendant's conduct was
reasonable. Pope, § 11:04 at 11-11. There is no absolute right to be free from all invasions of
privacy. Rather, only unreasonable intrusions are actionable. Pope, § 11:04 at 11-11 n.54. See
Berrier v. Beneficial Finance, Inc., 234 F.Supp. 204, 205 (N.D. Ind. 1964).

reasonable man in his position. <u>Goodridge</u>, 188 Conn. at 131. <u>See</u> Pope § 11:02 at 11-8. Thus, by definition of the tort, there is no action if the statement is true. <u>Jonap v. Silver</u>, 1 Conn. App. 550, 559 (1984). <u>See</u> Pope, § 11:04 at 11-13.

In the case at bar, it is undisputed that Boganski "invited" Flaherty into his home. Moreover, with regard to the alleged police blotter article about his arrest, Boganski has failed to prove its existence or that either Flaherty or Middletown had anything to do with the article. Finally, even assuming the article existed and that either Flaherty or Middletown had something to do with its publication, Boganski has failed to establish that the article contained any information that was not true. Nor has he established that it would have been unreasonable for either Flaherty or Middletown to provide true information. Accordingly, the Court should enter judgment in favor of Flaherty and Middletown on the fifth count.

**D.    The Plaintiff Has Failed To Establish A Claim For Negligent Infliction Of Emotional Distress**

In order to prevail on a claim of negligent infliction of emotional distress, a plaintiff must prove "that the defendant knew or should have known that his conduct involved an unreasonable risk of causing emotional distress and that the distress, if it was caused, might result in illness or bodily harm." <u>Gomez-Gill v. University of Hartford</u>, 63 F. Supp. 2d 191, 194 (D. Conn. 1999). Boganski has not demonstrated that the act of an arrest involved an unreasonable risk. Nor has he demonstrated any illness or bodily injury that occurred as a result of either Flaherty's or Middletown's actions.

Moreover, any finding by the Court that Flaherty's actions were objectively reasonable must preclude a finding that they were negligent. Obviously, if there was probable cause, or even arguable probable cause for Boganski's arrest, or that Flaherty's actions were reasonable in the use of force to effect the arrest, then it can hardly be reasoned that he was careless or

negligent in arresting or taking Boganski into custody.  Accordingly, the Court should enter judgment in favor of Flaherty and Middletown on the Seventh Count.

### E.      The Plaintiff Has Failed To Establish An Assault And Battery Claim

Assault and battery are distinct torts.  Pope, § 1:01 at 1-2.  A battery is an intentional, unprivileged, offensive bodily contact.  Id. § 1:02 at 1-3.  To be actionable as battery, the offensive conduct must not be privileged.  Id. § 1:08 at 1-9.  An assault is a physical act of a threatening nature or an offer of corporal injury which puts an individual in reasonable fear of imminent bodily harm.  Id. § 2:02 at 2-2.  By definition, an assault action cannot lie when the threatening gesture that caused the apprehension was justified or excused by some rule of law.  Id. § 2:04 at 2-3.  Thus, the existence of a privilege to make the gesture or create apprehension or complete the offensive bodily contact will defeat the action.  Id.

Where the defendant is authorized or obligated by law to make physical contact with the plaintiff, there is no tort.  Pope, § 1:14 at 1-18.  For example, if a police officer makes a lawful arrest of the plaintiff, the fact that an offensive physical contact was involved does not make the officer liable for battery.  Id.  See Conn. Gen. Stat. § 53a-22.  A citizen must submit to the authority of a police officer.  Pope, § 1:14 at 1-18.  See Conn. Gen. Stat. § 53a-23.  If a police officer uses reasonable force, the arrestee has no right to self-defense.  Pope, § 1:14 at 1-18.  Thus, a police officer may use reasonable force to effectuate an arrest, and may only be liable for excessive force if the amount of force was in excess of that which the officer reasonably believed to be necessary.  See Pope, § 1:14 at 1-18.  See also Butts v. Carey, 706 F.Supp. 158, 163 (D. Conn. 1988)[12]

---

[12]/      Moreover, a claim for battery will also not lie if the defendant struck the plaintiff in self-defense.  Pope, § 1:10 at 1-13.  In fact, the right to use self-defense is statutory in Connecticut.  Conn. Gen. Stat. §§ 53a-18, 19.

In the instant case, Boganski's assault claim is simply inapplicable.  Moreover, with regard to both the assault and battery claims, the amount of force used by Flaherty to take Boganski into custody was objectively reasonable as a matter of law.  Accord Graham v. Conner, 490 U.S. 386, 396 (1989); Finnegan v. Fountain, 915 F.2d 817, 823 (2d Cir. 1990); Mroz v. City of Tonawanda, 999 F.Supp. 436, 464 (W.D.N.Y. 1998).[13]  Flaherty was in a confined space within Boganski's home and knew that at least one other individual, Rodriguez, who was friendly to Boganski, was nearby and Boganski was calling out to Rodriguez.  (9/16/00 MPD Supp. Report; Flaherty Tr. at 42)  Instead of fully complying with Flaherty's efforts to issue an MSC, it is undisputed that Boganski wanted another officer or supervisor to be present and that Boganski grabbed for and/or pushed for the telephone receiver.  (Rodriguez Tr. at 35, 41, 46, 70; Boganski Tr. at 107-08)  Under these circumstances, it was reasonable and appropriate for Flaherty to take Boganski into custody and to use the force necessary to accomplish the custodial arrest.  See Mroz, 999 F.Supp. at 464-65; Owens v. Colburn, 860 F.Supp. 966, 972-73 (N.D.N.Y. 1994), aff'd 60 F.3d 812 (2d Cir. 1995).

As discussed above, as a result of the force used by Flaherty to handcuff him, Boganski maintains that his left cheek was bruised and that he could not talk "good" for a few hours because he had a scratchy throat.  (Boganski Tr. at 109, 112-13)  He concedes that he never needed any medical attention and never sought any mental health attention.  (Boganski Depo. Tr. at 109, 112, 117-18, 130-31)  The absence of any significant physical injury to Boganski confirms that the amount of force used was reasonable.  See Bond v. Queen, 71 F.Supp. 2d 1117, 1124-25 (D. Kan. 1999); Cooper v. City of Virginia Beach, 817 F.Supp. 1310, 1319 (E.D. Va. 1993), aff'd 21 F.3d 421 (4th Cir. 1994).  Finally, Boganski offers no theory under which

---

[13]/    Boganski has not alleged a constitutional claim for excessive force.

Middletown can be held liable.  Accordingly, the entry of summary judgment on the eighth count

is appropriate.

> **F.    The Plaintiff Has Failed To Establish A Claim For Malicious Prosecution
> Under Conn. Gen. Stat. § 52-568**

Conn. Gen. Stat. § 52-568 provides that

> [a]ny person who commences and prosecutes any *civil* action or
> complaint against another, in his name or the name of others, or
> asserts a defense to any civil action or complaint commenced and
> prosecuted by another (1) without probable cause, shall pay such
> other person double damages, or (2) without probable cause, and
> with a malicious intent unjustly to vex and trouble such other
> person, shall pay him treble damages.

(Emphasis added).

In the instant case, it is undisputed that neither Flaherty nor Middletown commenced or

prosecuted a "civil action or complaint" against Boganski.  Accordingly, the ninth count, which

is expressly based on § 52-568, should be dismissed as a matter of law.

Moreover, putting aside the non-applicability of the statute, the entry of summary

judgment on the § 52-568 claim is further justified by the existence of probable cause for

Boganski's arrest, as demonstrated above in detail.  See Zabelle v. Coratolo, 816 F.Supp. 115,

119 (D. Conn. 1993); Lo Sacco v. Young, 20 Conn. App. 6, 19-20 (1989).  Summary judgment

is also appropriate because a claim for malicious prosecution can only be asserted if there has

been an alleged perversion of proper legal procedures.  See Singer, 63 F.3d at 117; Lo Sacco, 20

Conn. App. at 20.  Here, it is undisputed that Boganski was not subjected to a prosecution.

(State v. Boganski, 11/20/00 Tr. at 1)  An arrest without a warrant is not the basis for a malicious

prosecution claim.  Id.  Finally, there is neither an allegation nor evidence that Flaherty "acted

with malice, primarily for a purpose other than that of bringing an offender to justice."  Lo

Sacco, 20 Conn. App. at 19-20. Accordingly, judgment should enter in favor of Flaherty and Middletown on the ninth count.

**V.    THE PLAINTIFF'S STATE LAW CLAIMS ARE BARRED BY GOVERNMENTAL/QUALIFIED IMMUNITY**

Boganski's state statutory and common law claims against Flaherty and Middletown are barred by governmental immunity. The determination of whether governmental immunity applies is a question of law. Gordon v. Bridgeport Housing Auth., 208 Conn. 161, 170 (1988). In outlining the scope of governmental immunity, Connecticut courts have recognized that municipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of discretion or judgment. Elliott v. Waterbury, 245 Conn. 385, 411 (1998). Specifically, a municipal employee, such as a police officer, has a qualified immunity in the performance of a governmental or discretionary act, as opposed to a ministerial act. Id. The hallmark of a governmental or discretionary act is that it requires the exercise of judgment. See Gordon, 208 Conn. at 167-68. On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action. Id. The operation of a police department is a discretionary governmental function, and acts or omissions in connection with police functions ordinarily do not give rise to liability. See id. at 180. Connecticut courts have consistently held that acts and omissions of police officers in the exercise of their duties are discretionary in nature. See, e.g., Davis-Trapani v. Scarcella, 2003 WL 21805633, at *3 (Conn. Super. July 23, 2003), aff'd 83 Conn. App. 903 (2004).

Here, it is undisputed that Flaherty was carrying out his duties as a police officer. As such, his actions were discretionary and he is entitled to governmental immunity on Boganski's state constitutional and common law claims.

Conn. Gen. Stat. § 52-557n(a)(2) provides as follows:

> Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or willful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

The general rule under Connecticut law is that a municipality is immune from liability for tortious acts unless the legislature has enacted a statute abrogating that immunity. Pane v. City of Danbury, 267 Conn. 669, 677 (2004). For example, municipalities are immune from liability for the torts of invasion of privacy and intentional infliction of emotional distress. Id. at 677, 684-85. See also id. at 685 (under Connecticut law, the term "willfulness" is synonymous with "intentional"). Moreover, under the general rule, a municipality enjoys governmental immunity for common law negligence. See Pane, 2002 WL 31466332, at *8.

Here, Middletown is entitled to governmental immunity on the state constitutional and common law claims. Moreover, it is entitled to governmental immunity to the extent Boganski is alleging malicious, willful or intentional acts by Flaherty. Conn. Gen. Stat. § 52-557n(a)(2)(A). It is also entitled to immunity because Boganski has not identified a statute which abrogates municipal immunity for the claims that he is asserting.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should grant Flaherty's and Middletown's motion for summary judgment in its entirety and enter judgment in their favor.  If the Court concludes that the federal claims should be dismissed but that one or more of the state law claims survive the motion and declines to exercise supplemental jurisdiction, the case must be remanded to the superior court.  <u>Ondis v. Barrows</u>, 538 F.2d 904, 908 (1st Cir. 1976); <u>Igolnikov v. Mallah Organization, Inc.</u>, 1993 WL 227769, at *1 (S.D.N.Y. June 22, 1993)(Sotomayer, J.).

Respectfully submitted,

**CO-DEFENDANTS
OFFICER BRIAN FLAHERTY
AND THE CITY OF
MIDDLETOWN**


By:  _____
James J. Szerejko
CT Fed. Bar No. 04326
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel. No.: (860) 522-6103
Fax No.: (860) 548-0006
E-mail:  szerejko@halloran-sage.com

## <u>CERTIFICATION</u>

This is to certify that on this 13th day of July, 2004, the foregoing was caused to be mailed, postpaid, to:

Leon M. Rosenblatt, Esq.
Lynn M. Mahoney, Esq.
Law Offices of Leon M. Rosenblatt
10 North Main Street, Suite 214
West Hartford, CT 06107
(Plaintiff)

Carl F. Fortuna, Jr., Esq.
Fortuna & Cardelli, P.C.
134 Washington Street
Middletown, CT 06457
(William C. Martin, Cynthia Martin & William Martin)

Attorney Trina A. Solecki
City of Middletown
245 DeKoven Drive
P.O. Box 1300
Middletown, CT 06457


_____
James J. Szerejko

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND .......................................................................................... 1

    I.      STATEMENT OF THE FACTS ............................................................ 1

          A.    The Hostile Relationship Between The
                 Plaintiff And His Neighbors Prior To
                 September 16, 2000 ......................................................... 1

          B.    The Events of September 16, 2000 ...................................... 2

                 1.    The Plaintiff's Misconduct ................................... 2

                 2.    Officer Flaherty's Investigation and
                        Arrest of the Plaintiff ..................................... 2

                 3.    The Processing of the Plaintiff and
                        the Post-Arrest Proceedings .............................. 4

    II.     THE PLAINTIFF'S CLAIMS ............................................................. 5

STANDARD OF REVIEW ........................................................................... 6

ARGUMENT ............................................................................................. 7

    I.      THE PLAINTIFF'S FEDERAL CONSTITUTIONAL
         CLAIMS ARE WITHOUT MERIT ...................................................... 7

          A.    The Plaintiff Has Failed To Establish A
                 Violation Of The Right To Privacy ...................................... 7

          B.    The Plaintiff Has Failed To Establish An
                 Unreasonable Search And Seizure Claim ............................. 9

          C.    The Plaintiff Has Failed To Establish A
                 False Arrest Claim ....................................................... 12

          D.    The Plaintiff Has Failed To Establish A
                 Violation Of The Equal Protection Clause .......................... 17

i

E.    The Plaintiff Has Failed To Establish
      Constitutional Violations Based On An
      Alleged Failure To Give Miranda Warnings
      And Not Being Afforded A Telephone Call ............................................ 19

II.    THE PLAINTIFF'S FEDERAL CONSTITUTIONAL
       CLAIMS ARE BARRED BY QUALIFIED IMMUNITY ................................. 21

A.    General Principles ..................................................................................... 21

B.    Qualified Immunity Applied .................................................................... 23

       1.    The Right to Privacy Claim ........................................................... 23

       2.    The False Arrest Claim .................................................................. 24

       3.    The Search and Seizure Claim ...................................................... 25

       4.    The Equal Protection Claim .......................................................... 25

       5.    The Miranda Warnings Claim ....................................................... 26

       6.    The Telephone Call Claim ............................................................. 26

III.    THE PLAINTIFF'S STATE CONSTITUTIONAL
        CLAIMS ARE WITHOUT MERIT .............................................................. 26

A.    The Plaintiff Has Failed To Establish A
      Violation Of His Right To Privacy .......................................................... 26

B.    The Plaintiff Has Failed To Establish An
      Unreasonable Search and Seizure Claim ................................................. 27

C.    The Plaintiff Has Failed To Establish A
      False Arrest Claim .................................................................................... 28

D.    The Plaintiff Has Failed To Establish An Equal
      Protection Claim ....................................................................................... 29

IV.    THE PLAINTIFF'S COMMON LAW AND STATE
       STATUTORY CLAIMS ARE WITHOUT MERIT ......................................... 30

A.    The Plaintiff Has Failed To Establish A False
      Arrest Claim .............................................................................................. 30

B.    The Plaintiff Has Failed To Establish A Claim
For Intentional Infliction Of Emotional Distress ....................................... 31

C.    The Plaintiff Has Failed To Establish An
Invasion Of Privacy Claim ......................................................................... 32

D.    The Plaintiff Has Failed To Establish A Claim
For Negligent Infliction Of Emotional Distress .......................................... 34

E.    The Plaintiff Has Failed To Establish An Assault
And Battery Claim ...................................................................................... 35

F.    The Plaintiff Has Failed To Establish A Claim
For Malicious Prosecution Under Conn. Gen.
Stat. § 52-568 ............................................................................................ 37

V.    THE PLAINTIFF'S STATE LAW CLAIMS ARE BARRED
BY GOVERNMENTAL/QUALIFIED IMMUNITY ........................................... 38

CONCLUSION .................................................................................................. 40

566343.1(HSFP)