UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID BOGANSKI | : | |
|     Plaintiff | : | CIVIL ACTION NO. |
| | : | 3:02-CV-523 (MRK) |
| VS. | : | |
| | : | |
| MR. WILLIAM C. MARTIN, | : | |
| OFFICER BRIAN FLAHERTY, | : | |
| and THE MIDDLETOWN POLICE | : | |
| DEPARTMENT | : | |
|     Defendants | : | JULY 13, 2004 |

## CO-DEFENDANTS' LOCAL RULE 56(a)1 STATEMENT IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56(a)1, the co-defendants, Officer Brian Flaherty and the City of Middletown submit this statement of undisputed material facts in support of their motion for summary judgment. A separate appendix of exhibits (A through O) contains the transcript pages and exhibits cited below and in the co-defendants' memorandum of law. Specifically, Flaherty and Middletown maintain that the following material facts are not disputed:

    1.    William C. Martin ("Mr. Martin") had called the Middletown Police Department ("MPD") on at least three (3) occasions regarding the plaintiff, David Boganski, prior to September 16, 2000. (Ex. B, Boganski's Depo. Tr. at 65-72)

    2.    The Martins maintained that Boganski had used profanities towards and harassed the neighborhood children multiple times per year. (Ex. E, Mr. Martin's Depo. Tr. at 37-38, 42, 52-53; Ex. F, William C. Martin, IV. ("Billy Martin") Depo. Tr. at 9-10; Ex. G, Cynthia Martin's Depo. Tr. at 26-31) Moreover, Mr. Martin maintained that Boganski had threatened to kill him

and that he had overheard Boganski threaten another neighbor. (Mr. Martin's Depo. Tr. at 28, 48).

3. Boganski maintains that he called the Middletown police regarding Mr. Martin and/or his neighbors' children in 1999 or 2000. (Boganski's Depo. Tr. at 67-68, 104-105)

4. Between 2:00-2:30 p.m. on September 16, 2000, Boganski pulled into his driveway and exited his vehicle. (Boganski Depo. Tr. at 98)

5. On September 16, 2000, Flaherty was dispatched to the Martins' residence in response to Cynthia Martin's call to the MPD complaining that Boganski had made obscene gestures at her son, William C. Martin, IV ("Billy") and a friend. (Ex. H, MPD Supplementary Report dated 9/16/00; Ex. A, Flaherty's Depo. Tr. p. 25)

6. At the scene, Flaherty first spoke with Mr. and Mrs. Martin, their son and his friend. (MPD Supplementary Report dated 9/16/00; Flaherty's Depo. Tr. at 25-26)

7. Flaherty was informed by the Martins that Boganski grabbed his genitals and made a jerking motion towards the Martins' son and his friend. (MPD Supplementary Report dated 9/16/00; Mr. Martin's Depo. Tr. at 84-85; Mrs. Martin's Depo. Tr. at 15-16; Billy Martin's Depo. Tr. at 18-19) Unbeknownst to Boganski, Mrs. Martin who was in her garage and not in plain view, observed his conduct. (MPD Supplementary Report dated 9/16/00; Ex. I, Mrs. Martin's 9/16/00 Sttaement)

8. Mrs. Martin prepared and signed a written statement/complaint regarding the incident with Boganski. (Ex. I, Mrs. Martin's 9/16/00 Statement; Mrs. Martin's Depo. Tr. at 16-17) In it, she expressly requested that Boganski be arrested. (Mrs. Martin's 9/16/00 Statement; Mr. Martin's Depo. Tr. at 84; Mrs. Martin's Depo. Tr. at 42-43)

9. During Flaherty's conversation with the Martins, they also informed him of their prior problems with Boganski. (Billy Martin's Depo. Tr. at 20; Mrs. Martin's 9/16/00 Statement)

10. During Flaherty's initial interview of the Martins and prior to his speaking with Boganski, Boganski's sexual orientation was not discussed. (Mr. Martin's Depo. Tr. at 85; Billy Martin's Depo. Tr. at 33)

11. On September 16, 2000, when Officer Brian Flaherty arrived at Boganski's home and inquired about what had happened, Boganski invited Flaherty into the house. (Boganski's Depo. Tr. at 102)

12. While Flaherty was speaking with Boganski in the kitchen, Boganski's friend, Mariano Rodriguez, was present and visible in a nearby room. (Boganski's Depo. Tr. at 102-103)

13. Flaherty explained to Boganski that he had received a complaint from the Martins and asked Boganski if he wanted to provide his version of the events. (Boganski's Depo. Tr. at 102; MPD Supplementary Report dated 9/16/00; Ex. C, Rodriguez's Depo. Tr. at 34-35)

14. Boganski told Flaherty that when he exited his car, Cynthia Martin called him a "fag" and other derogatory names. (MPD Supplementary Report dated 9/16/00)

15. Boganski also told Flaherty about previous problems he had had with the Martins and that his attorney had reviewed Connecticut's "Hate Laws" and advised him to call the police if he hade any further problems with the Martins. (Flaherty's Depo. Tr. at 36; MPD Supplementary Report dated 9/16/00)

16. Boganski informed Flaherty that he had not called the police in response to Mrs. Martin's comments on September 16, 2000, as advised by his attorney. (Flaherty's Depo. Tr. at 36, 40; MPD Supplementary Report dated 9/16/00)

17. Flaherty advised Boganski that he was going to be arrested via a misdemeanor summons complaint ("MSC") for breach of the peace and would not be taken into custody. (Boganski's Depo. Tr. at 103; Flaherty's Depo. Tr. at 31-33; MPD Supplementary Report dated 9/16/00)

18. The issuance of a MSC would not have required Boganski to be taken into the police station, but, rather, would only have required him to appear in court at a later date. (Flaherty's Depo. Tr. at 31-33; MPD Supplementary Report dated 9/16/00)

19. While Flaherty was attempting to prepare the MSC, Boganski told Flaherty that he wanted another police officer or supervisor to be present. (Boganski's Depo Tr. at 105, 239-240; Flaherty's Depo. Tr. at 39; Rodriguez's Depo. Tr. at 41, 46; MPD Supplementary Report dated 9/16/00)

20. Boganski turned away from Flaherty and grabbed and/or pushed for the telephone receiver. (Rodriguez's Depo. Tr. at 35, 41, 46, 70; Boganski's Depo. Tr. at 107-08; Flaherty's Depo. Tr. at 39, 41-44; MPD Supplementary Report dated 9/16/00)

21. As a result of the physical force that Flaherty used to take Boganski into custody and handcuff him, Boganski maintains that the left side of his cheek was bruised. (Boganski's Depo Tr. at 112) The bruise did not require any medical attention. (Id.) He also maintains that he could not talk "good" for a few hours immediately after his arrest because his throat was

scratchy, like "laryngitis." (Id. at 113)  Boganski never went to the hospital emergency room and did not seek any other medical treatment for his alleged injuries. (Id., at 112, 117, 130-131)  In fact, the only treatment, was his washing his face with cold water when he returned home from the MPD. (Id. at 112)

22.     Boganski never sought any mental health treatment in connection with his alleged injuries. (Boganski's Depo. Tr. at 117-118, 130-131)

23.     During Boganski's encounter with Flaherty, Flaherty never said anything that could be viewed as sexually disparaging. (Boganski's Depo. Tr. at 122)

24.     Boganski did not see either Flaherty or Officer Stephen Augeri either search his house or "look" in his car. (Boganski's Depo. Tr. at 183)  Rather, his claim is based on his allegation that he believed that things within his house were moved. (Id.)

25.     After Boganski was placed in Flaherty's police car, Flaherty and Augeri asked him if he wanted his house secured or whether he wanted it to be left in Rodriguez's possession. (Boganski's Depo. Tr. at 187)  Boganski told them to leave the house in Rodriguez's possession. (Id.)

26.     Boganski had several thousand dollars in cash in his pocket and wallet at the time of his arrest. (Boganski's Depo. Tr. at 187-88)  He authorized the police to leave the money with Rodriguez. (Id.)  He is not claiming that any of his money is missing. (Id.)

27.     While seated in the police car awaiting transport to the police station, Boganski threatened Mr. Martin, by stating that the matter was not over and that he was coming back for

him.  (Billy Martin's Depo. Tr. at 24-25; Mr. Martin's Depo. Tr. at 92-93; Flaherty's Depo. Tr. at 34; Mrs. Martin's 9/16/00 Statement)

  28. While at the Middletown police station, Boganski refused to sign documents. (Boganski's Depo. Tr. at 229; Ex. J, Notice of Rights Form dated 9/16/00)

  29. Boganski was charged with breach of the peace in violation of Conn. Gen. Stat. § 53a-181 and interference with a police officer in violation of 53a-167a.  (Ex. K, Uniform Arrest Report)

  30. Boganski was released from the Middletown police station on a $500 non-surety bond at approximately 5:30 p.m., at which time he called from a pay telephone for a ride home. (Boganski's Depo. Tr. at 231; Ex. L, Bail Interview Form; Ex. M, Appearance Bond)

  31. Boganski has never seen a news article regarding his arrest.  (Boganski's Depo. Tr. at 222, 234-235)

  32. Boganski discussed his arrest with Ron Martucci.   (Boganski's Depo. Tr. at 92-93)

  33. On November 20, 2000, the Assistant State's Attorney handling Boganski's criminal case represented to Judge Patrick Clifford of the Connecticut Superior Court that Boganski had "moved permanently to the State of Florida [and] ... On that basis, the state's going to enter a nolle.  Should he come back, the state would reopen the nolle ..." (Ex. O, 11/20/00 Tr. at 1, State v. Boganski, MO9M-CR00-055024-S)  The case was not dismissed for lack of probable cause or lack of evidence to support the arrest.  (Id.)

        Respectfully Submitted,

        **CO-DEFENDANTS,**
        **OFFICER BRIAN FLAHERTY**
        **AND CITY OF MIDDLETOWN**


By  _____
        James J. Szerejko
        CT Fed. Bar No. 04326
        **HALLORAN & SAGE LLP**
        One Goodwin Square
        225 Asylum Street
        Hartford, CT 06103
        Tel. No.:  (860) 522-6103
        Fax No.:  (860) 548-0006
        E-Mail:    szerejko@halloran-sage.com

        Their Attorney

**CERTIFICATION**

      This is to certify that on this 13th day of July, 2004, the foregoing was either mailed, postpaid, or hand-delivered to:

Leon M. Rosenblatt, Esq.
Lynn M. Mahoney, Esq.
Law Offices of Leon M. Rosenblatt
10 North Main Street, Suite 214
West Hartford, CT 06107
(Plaintiff)

Carl F. Fortuna, Jr., Esq.
Fortuna & Cardelli, P.C.
134 Washington Street
Middletown, CT 06457
(William C. Martin, Cynthia Martin & William Martin)

Attorney Trina A. Solecki
City of Middletown
245 DeKoven Drive
P.O. Box 1300
Middletown, CT 06457

                                                  _____
                                                  James J. Szerejko

566747.1